IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAVIER VALDEZ,

        Plaintiff,

vs.                                  CIV 14-0014 MCA/KBM

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## PROPOSED FINDINGS OF FACT
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or

Remand Administrative Agency Decision (*Doc. 17*), filed August 20, 2014, and fully

briefed on November 6, 2014 (*Doc. 21*).  The Honorable Chief Judge M. Christina

Armijo referred this case to me to conduct hearings, if warranted, and to perform any

legal analysis required to recommend to the presiding judge an ultimate disposition of

the case.  *Doc. 8*.  Having carefully reviewed the parties' submissions and the

administrative record, the Court respectfully recommends that the motion be granted

and the case remanded for further proceedings.

## I.  Background and Procedural History

Plaintiff is a 36-year-old male who suffers from gout, hypofunctional kidney in the

context of reflux uropathy, and degenerative disc disease of the lumbar spine who has a

history of working as a roofer and a cook (AR 14, 183, 208, 255).[1]  Plaintiff finished the

---

[1] Documents 14-1 through 14-13 comprise the sealed Administrative Record ("AR").  When citing the
record, the Court cites the AR's internal pagination, rather than the CM/ECF document number and page.

sixth grade in Mexico, speaks only Spanish, and currently lives with his wife and children.  AR 30, 33, 34, 54, 59, 184.  Plaintiff initially applied for disability insurance benefits when he was 29 years old, alleging he became disabled on February 25, 2008.  AR at 183.  Plaintiff is insured for disability benefits through June 2013. [2]  AR at 192, 197, 204.

Since Plaintiff's application was denied both at the initial and reconsideration levels (AR at 62-63), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR at 97-98), which took place on December 18, 2009 (AR at 68).  ALJ Ann Farris determined that Plaintiff was not disabled within the meaning of the Social Security Act (AR at 59-67), and Plaintiff requested that the Appeals Council review her decision, (AR at 122-23).  The Appeals Council granted Plaintiff's request, and on November 30, 2010, remanded the case back to the ALJ.  AR at 80-84.  Accordingly, ALJ Farris conducted a second hearing and, once again, determined that Plaintiff was not disabled.  AR 9-20.  Plaintiff appeals ALJ Farris' second unfavorable decision to this Court.

## II.    The Claims

Plaintiff asserts the following claims of error by the ALJ:  (1) failing to fulfill her duty to develop the record by not referring Mr. Valdez for an updated consultative evaluation; (2) failing to properly evaluate treating and examining source evidence; (3) failing to assess Plaintiff's residual functional capacity ("RFC") on a function-by-function basis; and (4) finding that 35,000 amounts to a significant number of jobs in the

---

[2] ALJ Farris notes that Plaintiff meets the insured status requirements through December 31, 2012, as documented in AR 64 (Disability Determination and Transmittal dated 4/20/2008).  The June 2013 date appears in other parts of the record cited above.  This date is immaterial to the determination of this motion, but the parties may want to correct the discrepancy on remand.

national economy.

### III.  Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42

U.S.C. § 405(g) to two inquiries:  first, whether the decision was supported by

substantial evidence; and second, whether the correct legal standards were applied.

*Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."

*Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) and *Bernal v. Bowen*,

851 F.2d 297, 299 (10th Cir. 1988)) (brackets in original).

The Court's review is based on the record taken as a whole, and the Court will

"meticulously examine the record in order to determine if the evidence supporting the

agency's decision is substantial, taking 'into account whatever in the record fairly

detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439

(10th Cir. 1994)).  This Court may not reweigh the evidence nor substitute its opinion for

that of the Commissioner.  *Id.* at 1214.

### IV.  Discussion

#### A.  Duty to Develop the Record

Plaintiff contends that the ALJ was derelict in her duty to develop the record by

failing to refer Mr. Valdez for an updated consultative evaluation.  An ALJ has the duty

to develop the record by obtaining pertinent, available medical records which come to

her attention during the course of the hearing.  *Carter v. Chater*, 73 F.3d 1019, 1022

(10th Cir. 1996) (citing 20 C.F.R. § 404.944).  However, the Commissioner has broad

latitude in determining whether to order a consultative exam.  *Hawkins v. Chater*, 113

F.3d 1162, 1166 (10th Cir. 1997).  Generally, an ALJ should order a consultative exam

where there is a direct conflict in the medical evidence requiring resolution, where the

medical evidence in the record is inconclusive, or where additional tests are required to

explain a diagnosis already contained in the record.  *Id.* (internal citations omitted).  *See*

*also* 20 C.F.R. § 416.919a (describing the situations that may require a consultative

examination).

On remand, the Appeals Council instructed the ALJ to:

> Obtain additional evidence concerning the claimant's lumbar spine
> impairment in order to complete the administrative record in
> accordance with the regulatory standards regarding consultative
> examinations and existing medical evidence (20 CFR 404.1512-
> 1513).  ***The additional evidence may include, if warranted and
> available, a consultative orthopedic examination and medical
> source statements about what the claimant can still do despite
> the impairment.***

AR 82 (emphasis added).

Following the initial proceedings, Plaintiff provided the ALJ with additional

medical records that establish Plaintiff suffers from a herniated disk in his lower lumbar

spine.  AR 472, 474, 469, 467.  Plaintiff also produced a medical source statement from

Elizabeth Etherton, a certified nurse practitioner[3] (AR 480), but the ALJ found her

---

[3] As a nurse practitioner, Etherton is not considered a "treating physician" whose opinion is entitled to controlling weight, *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005),  but is an "other source." "Other sources," as opposed to "Acceptable Medical Sources" include, but are not limited to, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.  20 C.F.R. § 404.1502(a); 20 C.F.R. § 404.1513(a).  "Acceptable medical sources" are licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).  Information from other sources "may provide evidence 'to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work," *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (quoting 20 C.F.R. § 404.1513(d)), but cannot establish the existence of a medially determinable impairment, or provide medical opinions,

opinions unacceptable (AR 16-17).  The only other record that describes Plaintiff's

functional capacity is a consultative exam by Dr. Sylvia Ramos from 2008.  AR 325-28.

Dr. Ramos' medical source statement lacks any specificity and merely opines that

Plaintiff "can sit, stand, walk, lift carry, handle small objects, hear, speak, and travel

except as limited by pain."  AR 327.   Recognizing that Dr. Ramos' report was "[m]ore

than three years old" at the time of the December 2011 hearing, ALJ Farris proposed a

new consultative examination and indicated that one would be scheduled.  AR 42, 43.

The record offers no explanation why the examination was not completed.  Even with

the additional records, the medical evidence is inconclusive with regard to Plaintiff's

functional capabilities and to what extent his impairments impact his ability to perform

work-related activities.

In light of the lack of evidence describing Plaintiff's functional capabilities, ALJ

Farris failed to fulfill her obligation to develop the record by obtaining medical source

statements either from Plaintiff's treating physicians or through a new consultative

exam, in accordance with both the regulations[4] and the order of the Appeals Council.

---

including what the claimant can still do despite any impairments, which are duties solely within the
purview of "acceptable medical sources."  *Frantz*, 509 F.3d at 1301 (citing 20 C.F.R. § 404.1527(a)(2));
*see also* 20 C.F.R. § 404.1513(a); 20 C.F.R 416.913(a)(1) and (2).
[4] 20 C.F.R. § 404.1513 states in pertinent part:

> (c) Statements about what you can still do. At the administrative law judge and Appeals
> Council levels, we will consider residual functional capacity assessments made by State
> agency medical and psychological consultants, and other program physicians and
> psychologists to be "statements about what you can still do" made by nonexamining
> physicians and psychologists based on their review of the evidence in the case record.
> Statements about what you can still do (based on the acceptable medical source's
> findings on the factors under paragraphs (b)(1) through (b)(5) of this section) should
> describe, but are not limited to, the kinds of physical and mental capabilities listed as
> follows (See §§ 404.1527 and 404.1545(c)):
>
> > (1) The acceptable medical source's opinion about your ability, despite
> > your impairment(s), to do work-related activities such as sitting, standing,
> > walking, lifting, carrying, handling objects, hearing, speaking, and
> > traveling. . . .

**B.      Function-by-Function Assessment**

Step Four of the sequential evaluation process is comprised of three phases.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these phases, the ALJ must make specific findings.

*Id.* (citations omitted).  An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level."  SSR 83-10, 1983 WL 31251 at *2.  It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, *7.

An ALJ may not simply express an RFC in terms of the exertional categories of "sedentary," "light," "medium" or "heavy" levels of work.  In order to insure accuracy, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing and pulling.  *Id.* at *1, 5; (citing 20 C.F.R. § 404.1545; 10 C.F.R. § 416.945).  "Each of the seven strength demands must be considered separately."  *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (citing SSR 96-8p at *3-4).

**6**

In her decision here, ALJ Farris simply pronounced that Plaintiff had the RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) except that [he] is prohibited from kneeling, crouching, or crawling and must avoid extremes of heat and cold."[5]  AR 15.  Thus, the ALJ's decision set forth "no discussion of 'the maximum amount of each work-related activity [plaintiff] can perform.'" *Southard*, 72 F. App'x at 784 (quoting *SSR 96-8P*) (brackets in original).

Moreover, there is a clear lack of evidence about Plaintiff's limitations apart from his own statements, which the ALJ rejected as "not credible to the extent they are inconsistent with the above residual functional capacity assessment."  AR 16.  Although Plaintiff testified about times when he cannot walk, sit, stand, lift, or reach (AR 33, 51, 207, 220, 224), the extent of the limitations and whether they impact Plaintiff's ability to perform sedentary work is unknown because the ALJ did not undertake her own function-by-function assessment of the seven strength demands.  Indeed, aside from Ms. Etherton, no medical provider described Plaintiff's capacity to perform the seven strength demands.  In sum, the ALJ's failure to perform a function-by-function assessment of Plaintiff's work-related activities renders her RFC finding unsupported by substantial evidence.

"Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case."  *SSR 96-8P* at *3.  By

---

[5]  **"**Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. **Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties**.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1567 (emphasis added).

failing to perform a function-by-function assessment, an ALJ may overlook certain limitations or restrictions that "would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitation or restrictions that he or she does not actually have."  *SSR 96-8P* at *4.   Thus, remand is appropriate here.

The Court will not address Plaintiff's remaining claims of error.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.")

## V.      Recommendation

For the reasons stated above, the Court recommends remand to provide the ALJ another opportunity to properly develop the record and to perform a function-by-function assessment in determining the Plaintiff's RFC.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE